## UNITED STATES v. PANHANDLE & SANTA FE RY. CO.

### Civ. A. No. 339.

United States District Court
N. D. Texas, San Angelo Division.

May 19, 1952.

William Cantrell, Jr., Asst. U. S. Atty., Dallas, Tex., for plaintiff.

Scott Snodgrass, San Angelo, Tex., for defendant.

ATWELL, Chief Judge.

The court having assessed two penalties of $100 each, against the defendant for the violation of the Safety Appliance provision, 45 U.S.C.A. § 1 et seq., at the recent San Angelo court, the defendant sought a new trial on the ground that the Secretary of the Army of the United States was not a party to the suit.

The second ground was because the defendant was engaging in a switching operation, and not in the movement of a train.

The motion was set down for hearing today, but the attorney for the defendant has notified the court that he does not care to present the motion, and that he has directed the execution of a voucher for the settlement of the judgment.

At no time during the trial of the case was the issue raised that the President of the United States had seized the railroads and had placed the Secretary of the Army in possession thereof.

I think it may be said, without laboring the point, that seizure may have been unconstitutional. The President is bounden by the Constitution. In Youngstown Sheet Metal & Tube Co. v. Sawyer, D.C., 103 F.Supp. 569, decided quite recently by Judge Pine, many decisions are cited, and many strong reasons are urged to show that such seizures may not be made by the President, either as Commander-in-Chief of the Armed Forces, or, under any other constitutional grant.

In addition to the citations in the opinion just mentioned, is the case of Home Building & Loan Ass'n. v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, which holds that emergencies do not create power. And in a more venerable case, entitled United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, the seizure by the President of an estate left by the widow of General Robert E. Lee, was declared to be illegal by a jury, and such a verdict was approved by the Supreme Court.

Furthermore, it must be borne in mind that the seizure of the railroads by the President, in August, 1950, was taken under a 1916 War Powers Act, Act Aug. 29, 1916, 39 Stat. 645, which provides that the President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system, or systems, of transportation, or any part thereof, and to utilize same, to the exclusion, as far as may be necessary, of all other traffic thereon, for the transfer of troops, war material, and equipment or for such other purposes connected with the emergency as may be needful or desirable.

It may be contended that the United States was still formally at war with Germany and Japan, which is a rather specious contention. Likewise, the war in Korea is only called a "police action."

Furthermore, pretermitting the constitutional inhibition, General Order No. 1 of the Department of the Army, with reference to the railroad, it is provided that, "Carriers will remain subject to suit as heretofore, * * * and to the levy of execution, or, otherwise, on or against the property and assets of the carrier."

As to the second ground of the motion, the testimony showed that the size of the train which moved across streets of the city of San Angelo, a distance of a mile and a half and two and one-half miles, enroute to a common switching point, was a train in motion, and not a switching operation, and that its safety appliances should have been connected as provided in the salutary statute requiring such appliances.